**VRIJESH S. TANTUWAYA MD, INC.,** a California corporation, Plaintiff,

v.

**ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, a** California corporation, and Blue Cross of California, a California corporation, and California Physicians' Service d/b/a Blue Shield of California, a California corporation, and, Does 1 through 5, inclusive, Defendants.

CASE NO. 15cv1671–WQH–NLS

United States District Court, S.D. California.

Signed March 10, 2016

Filed March 11, 2016

ORDER

HAYES, Judge:

The matters before the Court are the Motion to Remand filed by Plaintiff (ECF No. 7) and the Motion to Dismiss filed by Defendant California Physicians' Services

dba Blue Shield of California. (ECF No. 4).

## I. Background

On June 4, 2015, Plaintiff Vrijesh S. Tantuwaya MD, Inc. ("Plaintiff") commenced this action by filing a complaint in the San Diego Superior Court alleging violation of California's Unfair Competition Law ("UCL") (Bus. & Prof. Code, § .17200 et seq.) and reimbursement for the reasonable value of services rendered ("quantum meruit"). On July 28, 2015, Defendants filed a notice of removal of civil action in this court pursuant to 28 U.S.C. § 1442(a)(1), which permits removal where a person acting under the direction of a federal agency and its officers is sued for actions taken under color of federal office. (ECF No. 1).

On August 4, 2015, Defendants Anthem Blue Cross Life and Health Insurance Company ("Anthem Blue") and Blue Cross of California dba Anthem Blue Cross ("Blue Cross") filed a motion to dismiss. (ECF No. 3). On August 4, 2015, Defendant California Physicians' Services dba Blue Shield of California ("Blue Shield") also filed a motion to dismiss. (ECF No. 4). On August 28, 2015, Plaintiff filed a motion to remand. (ECF No. 7). On September 14, 2015, Plaintiff filed oppositions to both motions to dismiss. (ECF Nos. 8 and 9). On September 14, 2015, Blue Shield filed an opposition to Plaintiff's motion to remand. (ECF No. 10). On September 18, 2015, Anthem Blue and Blue Cross filed a reply to Plaintiff's opposition to the motion to dismiss. (ECF No. 11). On September 21, 2015, Blue Shield filed a reply to Plaintiff's opposition to the motion to dismiss. (ECF No. 12). On September 21, 2015, Plaintiff filed a reply to Blue Shield's opposition to the motion to remand. (ECF No. 13).

On January 28, 2016, Plaintiff filed a notice of supplemental authority regarding Plaintiff's motion to remand. (ECF No. 20). On February 1, 2016, Blue Shield filed a response to Plaintiff's supplemental authority. (ECF No. 21).

On February 4, 2016, Plaintiff filed a Notice of Settlement and Motion to Dismiss the Complaint With Prejudice as to Defendants Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California Only. (ECF No. 22). On February 5, 2016, the Court issued an Order dismissing Defendants Anthem Blue and Blue Cross with prejudice and denying the Motion to Dismiss filed by Anthem Blue and Blue Cross (ECF No. 3) as moot. (ECF No. 24).

On February 5, 2016, the Court held oral argument on the Motion to Remand filed by Plaintiff (ECF No. 7) and the Motion to Dismiss filed by Blue Shield (ECF No. 4).

## II. Allegations of the Complaint

Plaintiff is a physician who provides emergency medical services. (ECF No. 1 –2 at ¶ 4). "Defendants are corporations which are in the business of arranging for or providing health care services to [their] enrollees in California, including emergency health care services, or are in the business of administering health care services … for patients located in California that are members of certain … medical health insurers or groups … where the duty to reimburse non-contracted emergency physicians has been delegated to them." *Id.* at ¶ 6. Plaintiff has no contractual relationship with any of the Defendants. *Id.* at 5.

"Plaintiff performed the emergency medical services at issue on multiple patients insured by, administered by, or assigned to, one (or more) of the Defendants." *Id.* at ¶ 23. No personal information is listed in the complaint "regarding any individual patient in order to protect the patient's privacy rights

pursuant to the Health Insurance Portability and Accountability Act of 1996 ('HIPAA') ...." *Id.* at ¶ 25. "Information regarding each specific patient's claim at issue herein will be made known to the Defendant that insures or otherwise administers or has been assigned the patient's claim, and has a right to such information." *Id.* at ¶ 26.

Pursuant to the Knox–Keene Health Care Service Plan Act of 1975 ("Knox–Keene Act"), Cal. Health & Safety Code section 1340 et seq [1]., Plaintiff is "obligated to treat all emergency room patients without regard to whether the patients are insured or able to pay." *Id.* at 4. The Knox–Keene Act requires that Defendants pay Plaintiff "reasonable and customary value" for the emergency services rendered.[2] *Id.* at 16. "Defendants have a practice of paying Plaintiff arbitrary amounts for the emergency health care services provided to patients for which Defendants are responsible for reimbursement." *Id.* at ¶ 18. "Defendants have failed to reimburse Plaintiff for the reasonable and customary value of his services." *Id.* at ¶ 20. "Emergency service providers such as Plaintiff cannot 'balance bill' patients for amounts that the patients' insurers (i.e. Defendants) refuse to reimburse." *Id.* at ¶ 14. "Plaintiff's only allowed recourse is against Defendants." *Id.* "By not reimbursing Plaintiff at the reasonable amount for his emergency care services, with interest required by statute ... Defendants engaged in unlawful activity prohibited by Cal. Bus. & Prof. Code § 17200 et seq." *Id.* at ¶ 29. Defendants actions

"constitute unlawful business practices...." *Id.*

Blue Shield committed an unlawful business practice in violation of California law by issuing payments directly to its insured and/or customers. *Id.* at ¶ 33. "[O]n August 4, 2006, Blue Shield entered into a consent agreement with the Department of Managed Health Care, agreeing that it would cease and desist this practice." *Id.* Blue Shield "was fined an administrative penalty for paying patients directly instead of the physician the amount due for non-contracted emergency medical services." *Id.* Blue Shield's "insured/patients who are paid directly, in many cases, as are the cases at issue here, fail to reimburse Plaintiff the amounts due to him." *Id.* Plaintiff seeks damages "equal to the value of the emergency services rendered as determined pursuant to [California] law," restitution, disgorgement of profits, interest, injunctive, and other relief. (ECF No. 1–2 at 12).

### III. Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of two documents. (ECF No. 7–2 at 2). The first document is a copy of a consent agreement, entitled "Consent Agreement Re Payment of Claims For Emergency Services and Care," filed August 4, 2006 by the Department of Managed Health Care of the State of California. The second document is a copy of a Brief for the United States as Amicus Curiae Supporting Respondents, filed in the Supreme Court of the United

---

1. "Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness ... Cal. Health & Safety Code § 1317(a). "In no event shall the provision of emergency services and care be based upon, or affected by, the person's ... insurance status, economic status, [or] ability to pay for medical services. Cal. Health & Safety Code § 1317(b).

2. "A health care service plan, *or* its contracting medical providers, shall reimburse providers for emergency services and care provided to its enrollees...." Cal. Health & Safety Code§ 1371.4(b).

States, in the case of *Health Care Service Corporation v. Pollitt,* which settled before a decision was issued.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... is generally known within the trial court's territorial jurisdiction; or ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 210(b). "[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001) (quoting *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986)). Blue Shield does not object to or question the accuracy of the documents. Blue Shield contends that "the consent agreement does not and cannot apply to the FEHBA–governed Service Benefit Plan." (ECF No. 10 at 10 n. 1). Plaintiff does not argue that the Consent agreement applies to Blue Shield, as a FEHBA insurance carrier. The Court will take judicial notice of the documents filed by Plaintiff; however, neither document affects the outcome in this case.

## IV. Motion to Remand

Defendants Anthem Blue, Blue Cross, and Blue Shield removed this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), on the grounds that "at least one of the enrollees at issue in this case is enrolled in a health plan governed by the Federal Employees Health Benefits Act ('FEHBA'), 5 U.S.C. §§ 8901–14." (Notice of Removal ECF

No. 1 at 9). In the Notice of Removal, Defendants assert that one of the enrollees at issue, B.G., "was enrolled in the Blue Cross and Blue Shield Service Benefit Plan (or 'the Service Benefit Plan'), one of the federal government's health benefits plans for federal employees and their dependents." *Id.*[3]

 A civil or criminal action originally filed in state court may be removed to federal court if, among other things, the action is against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "[D]efendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute .... *Leite v. Crane Co.,* 749 F.3d 1117, 1122 (9th Cir.); *cert. denied,* —— U.S. ——, 135 S.Ct. 361, 190 L.Ed.2d 252 (2014). To invoke the federal officer removal statute, a removing party "must show that (1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [the removing party] took pursuant to a federal officer's direction, and (3) [the removing party] has a 'colorable' federal defense to plaintiffs' claims." *Leite,* 749 F.3d at 1120. Defendants bear the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction have been met. *Id.* Once a party properly removes under § 1442(a)(1), the federal district court has

---

**3.** Defendant Blue Shield states that Plaintiff's counsel sent Blue Shield's counsel a letter dated July 8, 2015, enclosing the list of patients referenced in the Complaint. *See* ECF No. 4–2 at 2. Because it was referenced in and integral to the Complaint, the Court considers this redacted list of patients. *See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005) (using the "incorporation by reference" doctrine, which permits a court to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.").

jurisdiction over the matter. *Ely Valley Mines, Inc. V. Harford Acc. and Indent. Co.,* 644 F.2d 1310, 1314 (9th Cir.1981).

Defendant asserts, and Plaintiff does not dispute, that they are "persons" within the meaning of § 1442. However, Plaintiff contends that removal is not proper under 28 U.S.C. § 1442(a)(1) because Defendants were not acting under a federal agency's direction and do not have a colorable federal defense. (ECF No. 7–1 at 6).

## A. Causal Nexus

■ Plaintiff brings this action to recover fees directly for emergency serviced perform on a federally insured patient, B.G. (ECF No. 7–1 at 1). Plaintiff has submitted the declaration of Ken Lobo, the President and owner of Lobo Solutions, Inc., a medical billing company who states, "The Explanation of Benefits for this patient that we received from Defendant Blue Shield stated that the payments were drafted to pay to the order of the patient." (ECF No. 7–3 at 2). Lobo states, "My office, on behalf of Plaintiff, attempted to contact and reach, but was unable to contact or reach, the patient." *Id.* Lobo states that Blue Shield informed an employee at Lobo Solutions that "Blue Shield had issued three checks directly to the patient, in the amounts of $57,120.00, $406.95, and $1,250.59." *Id.* at 2–3. Lobo states that Blue Shield informed the same employee "that the patient had not cashed or deposited the checks."

Plaintiff contends that removal was improper because Blue Shield did not "act[ ] under the direction of a federal officer" and "did not assist or help carry out the duties of a federal official by refusing to pay the physician an undisputed amount Blue Shield determined it owed." (ECF No. 7–1 at 6–7). Plaintiff contends that Blue Shield "merely 'reserve[ed] the right' to pay the insured directly" and "[n]o facts show that the federal government directed Blue Shield not to pay an undisputed amount to a medical provider." *Id.* at 13.

Blue Shield contends that removal is proper because Blue Shield was administrating the Service Benefit Plan under "the direct and detailed supervision of a federal agency." (ECF No. 1 at 14). Blue Shield contends that there is a causal nexus between Plaintiff s claims and the actions Blue Shield took pursuant to a federal officer's direction because Plaintiff is suing Blue Shield "expressly because of actions taken in the course of administering the Plan—specifically, in paying benefits." *Id.* Blue Shield contends that "OPM gave Blue Shield, as part of its administrative duties, the obligation to make payment of Plan benefits; federal officer removal does not require that OPM have expressly directed Blue Shield to do so in some specific way." (ECF No. 10 at 20).

The causal nexus inquiry requires a removing party show that the acts complained of were taken within the scope and course of its conduct "under the color of [federal] office." 28 U.S.C. § 1442(a)(1). The Supreme Court of the United States explained,

> The relevant relationship is that of a private person *"acting under"* a federal "officer" or "agency." In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." That relationship typically involves "subjection, guidance, or control." In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior.

*Watson v. Philip Morris Companies, Inc.,* 551 U.S. 142, 151–52, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007) (internal citations omit-

ted). "The words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'" *Id.* at 147, 127 S.Ct. 2301.

In *Jacks v. Meridian Resource Co., LLC,* 701 F.3d 1224 (8th Cir.2012), an insurance carrier administering a service benefit plan under FEHBA brought a subrogation and reimbursement claim based on the plan. Looking to FEHBA's legislative history, the Court of Appeals for the Eighth Circuit concluded that the purpose of FEHBA was to establish health insurance for federal employees and that insurance carriers "help the government fulfill the basic task of establishing a health benefits program for federal employees." *Id.* at 1233. The *Jacks* court concluded that OPM "has direct and extensive control over these benefit contracts under the FEHBA." The court determined that even though the plan "allows the carrier the discretion to pursue subrogation," that "does not foreclose the application of the federal officer removal statute" because "the subrogation provision is necessarily a product of the benefit payment process, a process over which OPM exerts regulatory control." *Id.* The court concluded that removal pursuant to the federal officer removal statute was proper because the insurance carrier was subject to extensive oversight by OPM. *See also, Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego,* 65 F.Supp.3d 985, 991 (S.D.Cal. 2014) (appeal filed) (following *Jacks* and concluding that "in exercising their subrogation rights, the [insurance carriers'] actions were taken pursuant to a federal officer's direction"); *Grp. Health Inc. v. Blue Cross Ass'n,* 587 F.Supp. 887, 891 (S.D.N.Y.1984) (federal officer removal by medicare administrator proper); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.,* 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (unpublished) (holding that "[a] health plan insurer contracting with a government

agency under a federal benefits program is considered a 'person acting under' a federal officer."); *but see Morris v. Humana Health Plan, Inc.,* 829 F.Supp.2d 848 (W.D.Mo.2011) (holding that "the fact that [the insurance carrier] voluntarily entered into a mutually agreed upon contract with the OPM to administer healthcare benefits to federally employed enrollees, does not rise to the level of a relationship defined as 'acting under a federal officer.'"); *Van Horn v. Arkansas Blue Cross and Blue Shield,* 629 F.Supp.2d 905 (E.D.Ark.2007) (holding that health insurer contracted with FEHBA was not acting under a federal agency within the meaning of the federal officer removal statute).

The Federal Employees Health Benefits Act of 1951 ("FEHBA"), 5 U.S.C. § 8901 *et seq.,* "establishes a comprehensive program of health insurance for federal employees." *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 682, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). FEHBA authorizes the Office of Personnel Management ("OPM") "to contract with private carriers to offer federal employees an array of health care plans." *Id.* FEHBA requires that OPM determine the benefit structure of each plan and create a detailed statement of the plan's terms. 5 U.S.C. § 8902(d). "Pursuant to FEHBA, OPM entered into a contract in 1960 with the [Blue Cross Blue Shield Association] to establish a nationwide fee-for-service health plan, the terms of which are renegotiated annually." *Empire Healthchoice,* 547 U.S. at 684, 126 S.Ct. 2121. The "Blue Cross Blue Shield Service Benefit Plan ... [is] administered by local Blue Cross Blue Shield companies." *Id.* at 682, 126 S.Ct. 2121. "As FEHBA prescribes, the Federal Government pays about 75% of the premiums; the enrollee pays the rest." *Id.* Premiums are deposited in a "special Treasury Fund, the Federal Employees Health Benefits Fund, § 8909(a)" and carriers

"draw against the Fund to pay for covered health-care benefits." *Id.*

In this case, OPM contracted with the Blue Cross and Blue Shield Association to create the Service Benefit Plan. *See* ECF No. 1–6 ("Master Contract"); ECF No. 1–10 ("Statement of Benefits"). The Blue Cross and Blue Shield Association acts on behalf of local Blue Cross and Blue Shield companies that administer the Plan in their respective localities. (Master Contract 1–6 at 51, § 4.3). The Master Contract states that "[b]enefits are payable to the Enrollee in the Plan or his or her assignees." (Master Contract 1–6 at 29, § 2.3(f)). Blue Shield administers the Plan in California. (Statement of Benefits at 6). Contributions of enrollees and the Government are paid into the Employees Health Benefits Fund, in the Treasury of the United States, which is administered by OPM. 5 U.S.C. § 8909. The Statement of Benefits, which is "authorized for distribution by" OPM, in the Blue Shield Plan provides that Blue Shield "reserve[s] the right to pay you, the enrollee, directly for all covered services." (Statement of Benefits at 2, 140).

As carriers of insurance to federal employees, Defendants assist the government in fulfilling the task of managing a health insurance program for federal employees. *See Jacks,* 701 F.3d at 1233; *Goncalves* 65 F.Supp. 3 at 991. OPM has direct and extensive control over the benefit contracts. *See* 5 U.S.C. § 8902(a), (d), (e). When federal employees enroll in the FEHBA program, they are subscribing to the OPM standard contract and statement of benefits which OPM approved. The act that forms the basis of Plaintiff's claims— Defendants' failure to pay Plaintiff directly for the provided emergency services—is an act that Defendants performed under the administration of the Benefit Service Plan pursuant to OPM's guidance and supervision. The Court concludes that De-

fendants have shown by a preponderance of the evidence that there is a causal nexus between Plaintiff's claims and the actions Defendants took pursuant to the regulatory control of OPM.

## B. Colorable Federal Defenses

■■■ To invoke the federal officer removal act, a party must have a "colorable [federal] defense," but the party "need not win [the] case before [the party] can have it removed." *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Defendants assert three colorable federal defenses to Plaintiff's claims: (1) FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1); (2) sovereign immunity because "the funds that would be used to pay Plaintiff for its services would come directly from the federal Treasury"; and (3) "Plaintiff's state-law claims are displaced by federal common law." (ECF No. 1 at 15–16). Plaintiff contends that Defendants do not have any colorable defenses.

The Court concludes that Blue Shield has shown by a preponderance of the evidence that Blue Shield has a colorable defense that Plaintiff's claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and benefits payments "shall supersede and preempt any State or local law...." *See Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 697–98, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (concluding that a preemption defense is at least "plausible"). Plaintiff's claims under state law arguably implicate FEHBA coverage and relate to the FEHBA plan. Sovereign immunity or displacement provide additional colorable defenses. *See Hagemeier v. Block,* 806 F.2d 197, 202 (8th Cir.1986); *Boyle v. United Techs. Corp.,* 487 U.S. 500, 507, 108 S.Ct. 2510, 101

L.Ed.2d 442 (1988). Plaintiff's Motion to Remand is denied.

## V. Motion to Dismiss

### A. Standards of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir.2000). In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Doyle*, 373 F.3d 1035, 1039 (9th Cir.2004).

### B. Preemption under FEHBA

■ Blue Shield contends that Plaintiff's state law claims must be dismissed because they are preempted by § 8902(m)(1). (ECF No. 4–1 at 12). Blue Shield contends that Plaintiff's state law claims relate to the Service Benefit Plan and that "FEHBA's preemptive reach extends to state law claims brought by medical providers" just as it does "to suits brought by enrollees." *Id.* at 17.

Citing to *Cedars–Sinai Medical Center. v. National League of Postmasters of U.S.*, 497 F.3d 972, 974–75 (9th Cir.2007). Plaintiff contends that claims brought by a "non-contracted third party against a FEHBA . . . administrator" are "not preempted." (ECF No. 9 at 6). Plaintiff contends that his state claims are not preempted because (1) Plaintiff is not a "covered individual" under FEHBA and (2) Plaintiff's suit does not relate to a "benefit." *Id.*

In *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir.2009), the Court of Appeals for the

Ninth Circuit court noted that "FEHBA and [Employee Retirement Income Security Act ("ERISA")] are different federal statutes but their preemption provisions," § 514(a) and § 8902(m)(1), are "analytically similar." In the context of ERISA, the Court explained the difference between "complete preemption" and "conflict preemption."

Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." Complete preemption removal is an exception to the otherwise applicable rule that a "plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." The general rule is that a defense of federal preemption of a state-law claim, even conflict preemption under § 514(a) of ERISA, is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a). A provision of state law may "relate to" an ERISA benefit plan, and may therefore be preempted under § 514(a). But a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court.

. . . .

We may have been partially responsible for the parties' confusion between complete preemption under § 502(a), which provides a basis for federal question removal jurisdiction, and conflict preemption under § 514(a), which does not. Some of our prior opinions dealing with complete preemption under § 502(a)

have used the terminology "relate to" even though that terminology is relevant to conflict preemption under § 514(a) rather than complete preemption under § 502(a).

*Id.* at 945–46 (internal citations omitted). Unlike § 502(a), ERISA's complete preemption provision, FEHBA's preemption provision, § 8902(m)(1), cannot be read as a "jurisdiction-conferring provision." *See Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 697–99, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006).

In this case, neither party asserts jurisdiction based on complete preemption and the Court has concluded that it has jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The issue before the Court is whether Plaintiff's state law claims, brought under the UCL and for quantum meruit, for failure "to pay the reasonable and customary value of the non-contracted emergency services rendered" are preempted by § 8902(m)(1), FEHBA's preemption provision. *See* ECF No. 1–2 at ¶ 29; 40.[4]

■ The FEHBA express preemption provision provides,

The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). "The policy underlying section 8902(m)(1) is to ensure uniformity in the administration of FEHBA benefits." *Hayes v. Prudential Ins. Co. of Am.,* 819 F.2d 921, 925 (9th Cir.1987) (cit-

---

**4.** To the extent that Plaintiff seeks an order in this case determining what a "reasonable and customary value for the services rendered" would be, the Court finds that there is insufficient evidence to make this determination. *See* ECF No. 1–2 at ¶ 18, 19,20.

ing H.R.Rep. No. 282, 95th Cong., 1st Sess. 1, 4 (1977)).

■■■ Under the statutory language, two conditions must be met to trigger preemption: (1) the FEHBA contract terms at issue "relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits)" and (2) the state or local law "relates to health insurance or plans." *See* 5 U.S.C. § 8902(m)(1); *see also Empire Health-Choice Assur., Inc. v. McVeigh,* 396 F.3d 136, 145 (2d Cir.2005) *aff'd,* 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Botsford v. Blue Cross and Blue Shield of Montana, Inc.,* 314 F.3d 390, 394 (9th Cir.2002). "[S]tate law— whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits'" under FEHBA. *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 686, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006).

In *Hayes,* an enrollee in a FEHBA plan filed suit against an insurance carrier for various state law claims based on the carrier's alleged refusal to pay benefits. 819 F.2d at 921. The district court granted summary judgment in favor of the carrier finding that pursuant to § 8902(m)(1), FEHBA preempted the state-law claims. On appeal, the plaintiff contended that his state law claims were not preempted be-

cause the preemption provision "precludes only those state claims that apply to the 'benefit structure' of the plan." *Id.* at 926. The plaintiff contended that his state law claims related to the "manner in which" his claims were "processed," not the "nature or extent of coverage or benefits." *Id.* The Court of Appeals for the Ninth Circuit determined that "[n]o such distinction [could] be made" and that "claims 'relate to' the plan under section 8902(m)(1) as long as they have a connection with or refer to the plan." *Id.* The Court of Appeals determined that all of the plaintiff's state law claims "refer to the plan, and therefore fall under the preemption clause." *Id.* The Court of Appeals stated, "Because the state law claims invariably expand [the defendants'] obligations under the terms of the Plan, the claims are inconsistent[5] with the Plan and, hence, preempted under § 8902(m)(1)." *Id.*

In this case, Plaintiff's state law claims for failure "to pay the reasonable and customary value of the non-contracted emergency services rendered" stem from the Knox–Keene Health Care Service Act. *See* ECF No. 1–2 at ¶ 29; 40. The Knox–Keene Health Care Service Act relates to health insurance. The remaining issue under FEHBA's preemption statute is whether the FEHBA contract terms at issue "relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits)." *See* 5

---

**5.** In *Hayes,* the Court of Appeals for the Ninth Circuit analyzed the former version of the FEHBA preemption statute. This statute included the term "inconsistent" and read as follows:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent

that such law or regulation is inconsistent with such contractual provisions.

"In 1998, Congress amended § 8902(m)(1) by deleting the words 'to the extent that such law or regulation is inconsistent with such contractual provisions.'" *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 686, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). "Thus, under § 8902(m)(1) as it now reads, state law—whether consistent or inconsistent with federal plan provisions—is displace on matters of 'coverage or benefits.'" *Id.*

U.S.C. § 8902(m)(1). Plaintiff is a third-party provider of emergency services with no contractual relationship with Blue Shield. *See Cedars–Sinai Medical Center. v. National League of Postmasters of U.S.,* 497 F.3d 972, 974–75 (9th Cir.2007) (finding that Cedars–Sinai's claims were not preempted because they were "predicated not on the [service benefits] plan" but on a separate contract between the carrier and the medical services provider). Plaintiff's claim that Plaintiff never received compensation for the emergency care of B.G. directly relates to the processing and administration of the enrollee's covered claims which is governed by the Service Benefits Plan and the Contract between Blue Shield and OPM. Any obligation that Blue Shield could have to pay Plaintiff stems directly from the B.G.'s enrollment in the Service Benefit Plan and directly relates to the payment of B.G.'s benefits under the plan. *See Hayes,* 819 F.2d at 926 (holding that "[t]ort claims arising out of the manner in which a benefit claim is handled" are preempted by FEHBA); *Botsford,* 314 F.3d at 396 ("Because the dispute in this case is, at its root, a dispute over benefits, conflict preemption applies."). The Court concludes that Plaintiff s state-law claims are preempted by § 8902(m)(1).[6]

## C. Sovereign Immunity

■ Blue Shield contends that Plaintiff's claims are barred under the doctrine of sovereign immunity because the federal government is the "real party in interest" in FEHBA disputes and therefore would bear the judgment in this case. (ECF No. 4–1 at 19). Blue Shield contends that it is not relevant whether the money owed would be in the form of "restitution" or "damages" because either way the "recovery would come from the federal treasury." (ECF No. 12 at 10). Blue Shield contends that Plaintiff s claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 19.

Plaintiff contends that "neither the United States government, nor the United States Treasury, has any interest in the amount claimed ... because Blue Shield already determined that this amount is owed under the FEHBA plan." (ECF No. 9 at 3). Plaintiff contends that the United States Treasury will not be liable for damages in this case because Plaintiff is not seeking damages. *Id.* at 7.

■ The United States, as a sovereign, is immune from suit. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). "It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States." *Roberts v. United States,* 498 F.2d 520, 525 (9th Cir.1974). The United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Baker v. United States,* 817 F.2d 560, 562 (9th Cir.1987).

In this case, Plaintiff has filed state-law claims against Blue Shield, an insurance carrier administering the Service Benefit Plan under FEHBA pursuant to the Master Contract with OPM. Blue Shield issued three checks to the enrollee; however, those checks were not cashed. The Master Contract states that "[p]ayment of checks issue pursuant to this contract shall

---

6. OPM created a mandatory administrative remedy for those who assert that an insurance carrier had wrongfully denied benefits. 5 C.F.R. § 890.15. The administrative process is available to "covered individuals and to other individuals or entities who are acting on the behalf of a covered individual and who have the covered individual's specific written consent to pursue payment of the dispute claim." 5 C.F.R. § 890.105(a)(2). Plaintiff can seek relief in this case by receiving B.G.'s "specific written consent to pursue payment."

be voided if the checks have been outstanding for two (2) years." (ECF No. 1–6 at 43). The Master Contract states that the amount represented by those checks "shall be credited to the Special Reserve of this contract no later than the 25th month after issuance." *Id.* The funds from checks that are not cashed are returned to the federal treasury account, not to Blue Shield. *See id.* at 41–42. Any recovery against Blue Shield in this case would come from the funds in the federal treasury. The United States cannot be sued without its consent and the United States has not waived sovereign immunity in this case for a direct action by a provider. Plaintiff's claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

**D. ERISA.**

[redacted] Blue Shield contends that another patient that allegedly received emergency treatment from Plaintiff in 2011, was enrolled in an ERISA plan self-funded by Starbucks. (ECF No. 4–1 at 11). Blue Shield contends that ERISA preempts Plaintiff's state-law claims. *Id.* Blue Shield contends that Plaintiff's claims "relate to" the ERISA governed plan. *Id.* at 24. Blue Shield contends that Plaintiff s state-law claims cannot be saved from preemption by ERISA's "saving clause" because ERISA's "deemer clause" provides that self-funded ERISA plans may not be deemed to be insurers or insurance companies for purposes of the savings clause. *Id.* at 26.

Plaintiff contends that state law claims brought by non-contracted third parties are not preempted by ERISA. (ECF No. 9 at 7). At the hearing, Plaintiff contended that there was not enough evidence before the Court on the motion to dismiss to determine whether or not, for purposes of the deemer clause, that the Starbucks ERISA plan was self-funded.

[redacted] Section 514(a) of ERISA provides that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The Supreme Court held that a state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). A state law has a "connection with" an ERISA-governed plan when a state-law claims has a "genuine impact" on a relationship governed by ERISA. *Providence Health Plan v. McDowell,* 385 F.3d 1168, 1172 (9th Cir. 2004). A state-law claim has a "reference to" an ERISA-governed plan where "the claim is premised on the existence of an ERISA plan, and ... the existence of the plan is essential to the claim's survival." *Id.* " State common law tort and contract actions asserting improper processing of a claim for benefits under an employee benefit plan are generally preempted by ERISA." *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC,* No. 2:15–CV–00319–MCE, 2015 WL 5009093, at *8 (E.D.Cal. Aug. 20, 2015).

ERISA's "saving clause," provides an exception to ERISA preemption. That clause states, "noting in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). However, ERISA's "deemer clause" provides that self-funded ERISA plans may not be deemed to be insurers or insurance companies for purposes of the savings clause. 29 U.S.C. § 1144(b)(2)(B); *see FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regu-

**1072**

lat[e] insurance' within the meaning of the saving clause.")

In this case, Plaintiff's state-law claims are based on the allegation that Blue Shield wrongfully denied Plaintiff adequate reimbursement for emergency services that Plaintiff provided to an enrollee in the Starbucks ERISA plan. "FEHBA and ERISA are different federal statutes, but their preemption provisions are analytically similar." *Marin Gen.* 581 F.3d at 950. The Court concludes that Plaintiff's state-law claims, which attempt to recover benefits under the terms of the plan, "relate to" the Starbucks ERISA plan. *See Providence Health Plan v. McDowell,* 385 F.3d 1168, 1172 (9th Cir.2004) ("In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient 'reference' exists to support preemption."); *Hewlett–Packard Co. v. Barnes,* 425 F.Supp. 1294, 1297 (N.D.Cal.1977) *aff'd,* 571 F.2d 502 (9th Cir.1978) ("Although defendant finds the phrase 'relate to' 'vague and ambiguous,' the Court doubts that Congress could have chosen any more precise language to express its intent to preempt a state statute such as Knox–Keene insofar as it seeks to regulate ERISA-covered employee benefit plans such as those maintained by plaintiffs."); *Lodi,* No. 2:15–CV–00319–MCE, 2015 WL 5009093, at *8 (ERISA "preempts state law causes of action based on improper payment of claims for medical benefits....").

Having concluded that Plaintiff's state-law claims "relate to" the Starbucks ERISA Plan, the Court turns to ERISA's savings clause and the deemer clause. *See* 29 U.S.C. § 1144(b)(2)(A)–(B). The Starbucks Benefits Plan Description states, "You and Starbucks share the cost of med-ical benefits for you and your enrolled dependents." (ECF No. 4–7 at 46). The U.S. Benefits Plan Description for Starbucks explains, "The Plan is funded through contributions by participants who designate a part of their eligible pay to be contributed on their behalf and by Starbucks through matching and discretionary profit sharing contributions." (ECF No. 4–5 at 171). In her declaration, Megan Smith, a Research Analyst at Premera Blue Cross, states, "The Starbucks plan Descriptions for 2009 through 2011 demonstrate that the Starbucks health plan is self-funded and subject to ERISA." (ECF No. 4–3 at 3). The Court concludes that Blue Shield has presented sufficient evidence to establish that the Starbucks ERISA plan was self-funded. Under ERISA's "deemer clause," the ERISA self-funded plan may not be deemed to be insurers or insurance companies for purposes of the savings clause. *See FMC Corp.,* 498 U.S. at 61, 111 S.Ct. 403 ("We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause."). The Court concludes that Plaintiff's state-law claims are preempted by § 514(a).

## VI. Conclusion

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 7) is denied.

IT IS FURTHER ORDERED that the Motion to Dismiss filed by Defendant California Physicians' Services dba Blue Shield of California (ECF No. 4) is granted with prejudice.