# United States Court of Appeals
## For the Eighth Circuit
_____

Nos. 20-1635; 20-2545-48; 20-2550; 20-2556
_____

Christopher Graves; Jeff Hall, et al.

*Plaintiffs - Appellees*

v.

3M Company; Aearo Technologies LLC

*Defendants - Appellants*
_____

Nos. 20-3108; 20-3607; 20-3613-14; 20-3616-17; 20-3620; 20-3627;
20-3634; 20-3636; 20-3642-45; 20-3647-49
_____

Casey Copeland, et al.

*Plaintiffs - Appellees*

v.

3M Company; Aearo Technologies LLC

*Defendants - Appellants*
_____

Appeals from United States District Court
for the District of Minnesota
_____

Submitted: June 15, 2021
Filed: October 20, 2021
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge

Plaintiffs are employees of civilian and military contractors who used Combat Arms Version 2 ("CAEv2") earplugs manufactured by Aearo Technologies and sold by 3M Company, which acquired Aearo Technologies in 2008 (collectively, "3M"). After suffering hearing damage or tinnitus, plaintiffs brought separate suits against 3M in Minnesota state court, asserting failure-to-warn claims under state law. 3M removed the actions to federal court, asserting federal officer defenses under 28 U.S.C. § 1442(a)(1). The district court granted plaintiffs' motions to remand the cases to state court for lack of federal jurisdiction, concluding that § 1442(a)(1) was not a basis for removal.[1] 3M appeals the remand orders. We have jurisdiction to review remand orders when cases have been removed pursuant to § 1442. See 28 U.S.C. § 1447(d). Reviewing *de novo*, we affirm the remand orders in the Graves and Hall actions. We affirm in part and reverse in part the remand orders in the Copeland cases and remand for further proceedings.

_____

[1]In the district court, Graves, Hall et. al, and Copeland et. al, were three separate cases. On appeal, the parties agreed that the Graves and Hall appeals present the same facts and legal issue; we granted their request to consolidate those appeals. The Copeland appeal remains separate because it includes military contractor plaintiffs as to whom 3M asserts alternative theories of federal question jurisdiction. We resolve 3M's appeals as to both groups of plaintiffs in this opinion.

-2-

# I. Background

In 1999, Dr. Doug Ohlin, Program Manager of Hearing Conservation for the U.S. Army Center for Health Promotion and Preventative Medicine, told Aearo that the Army needed a dual-ended earplug capable of blocking damaging noise from weapons fire while also allowing soldiers to hear each other when wearing them. Aearo submitted a sample dual-ended earplug in which one side was non-linear, providing mitigation of loud weapons fire while allowing soldiers to communicate, and the other side was a standard linear earplug. Dr. Ohlin rejected the first sample as too long, specifying that military earplugs needed to be shorter for various reasons, most importantly, to fit under a fastened Kevlar helmet. Aearo submitted a shortened version. After review, Dr. Ohlin issued a formal purchase order. In 2001, Aearo sent user instructions to Major Mark Little during testing and evaluation of the earplugs. To accommodate the shortened earplug stem, the instructions said to "fold back" the sealing rings of the outward plug to improve fit.

The military required Aearo to package CAEv2 earplugs purchased by the military in bulk, without instructions, because the military intended to train service members on their use. In 2004, the military issued wallet cards to accompany CAEv2 earplugs that provided warnings and instructions, including the "fold back" guidance for proper fitting.

Aearo developed a version of the CAEv2 earplugs for commercial sale, using the same design as the military version in all material respects. Aearo drafted instructions for the commercial product based on the fitting guide it had sent Major Little and solicited feedback from Dr. Ohlin on those instructions. Dr. Ohlin responded that he thought the instructions were "great" but lacked guidance about sizing issues for smaller ear canals. Adopting Dr. Ohlin's suggestion, Aearo added language about smaller ears to its commercial instructions.

Each plaintiff in these cases alleges that he or she was exposed to loud, damaging sounds in the workplace and used either military or commercial CAEv2 earplugs for protection. Plaintiffs allege they suffered a range of injuries, including hearing loss and tinnitus, caused by 3M's failure to warn of the known risk of injury posed by using CAEv2 earplugs without following specific fitting instructions.

In its petition for removal under 28 U.S.C. § 1442(a)(1), 3M argued the district court has federal question jurisdiction because 3M designed the CAEv2 earplugs in conjunction with the military for military purposes, which provides a federal contractor defense under the Supreme Court's decision in Boyle v. United Technologies Corp., 487 U.S. 500 (1988). Plaintiffs moved to remand, arguing they are asserting failure-to-warn claims, not the design-defect claims asserted by plaintiffs in the ongoing multidistrict litigation in the Northern District of Florida involving CAEv2 earplugs. Plaintiffs argued 3M failed to demonstrate causation and a colorable federal contractor defense, two prerequisites of § 1442(a)(1) removal. After a hearing on the motion to remand in Graves, the district court granted the motion, concluding 3M had not established a colorable federal contractor defense because it failed to demonstrate a conflict between its obligation to design the product within military specifications and its state law duty to warn civilian purchasers of known risks. Graves v. 3M Co., 478 F. Supp. 3d 908, 914-16 (D. Minn. 2020). The court then granted the motions to remand in the Hall and Copeland cases for the same reasons. 3M timely appealed.

## II. Discussion

The single issue on appeal is whether the court erred in determining it lacked jurisdiction under § 1442(a)(1) and granting the motions to remand. We review the district court's determination that it lacked federal jurisdiction *de novo*. Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007).

-4-

"The federal officer removal statute permits a defendant to remove to federal court a state-court action brought against the

'United States or any agency thereof or any officer *(or any person acting under that officer)* of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .'  28 U.S.C. § 1442(a)(1) (emphasis added)."

Watson v. Philip Morris Cos., 551 U.S. 142, 145 (2007).  "Section 1442(a) is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."  Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12 (2006) (quotation marks omitted).

When the removing party is not itself a federal officer or agency, as in this case, § 1442(a)(1) "permits removal only if [3M], in carrying out the acts that are the subject of the petitioner's complaint, was acting under any agency or officer of the United States."  Watson, 551 U.S. at 147 (cleaned up).  Thus, to remove under § 1442(a)(1), 3M must make a threshold showing that  (1) it is a person as defined in the statute (which is undisputed) that has acted under the direction of a federal officer; (2) there was a casual connection between its actions and the official authority; and (3) it has a colorable federal defense to the plaintiff's claims.  See Jacks v. Meridian Res. Co., 701 F.3d 1224, 1230 (8th Cir. 2012).

A. The "Acting Under" and Causal Connection Elements.  In the district court, Graves argued 3M did not satisfy the causation element because there was no evidence "any official government authority caused 3M to fail to warn Mr. Graves." The district court rejected that contention, relying on cases from other circuits, because 3M provided evidence "that the warnings and instructions for its earplugs plausibly have some connection to, or association with, governmental actions." Graves, 447 F. Supp. 3d at 913.

The "causal connection" element stems from the requirement in § 1442(a)(1) that the person seeking removal is being sued "for or relating to any act under color of such office." See Willingham v. Morgan, 395 U.S. 402, 409 (1969). What both Graves and the district court ignored is that the causal connection element is closely related to the "acting under" element when the party seeking removal is not itself a federal officer. To be sure, the causal connection "requirement is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage -- there must be a causal connection between the charged conduct and asserted official authority." Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012) (quotation marks omitted). But if 3M was not "acting under" federal authority when it failed to warn commercial earplug customers of the injury risks plaintiffs allege, it may not remove under § 1442(a)(1), no matter how much connection there was between its commercial warnings and instructions and its earlier actions as government contractor. The district court erred in not beginning its analysis with the "acting under" element.

"To satisfy the 'acted under' requirement of § 1442(a)(1), a private person's actions 'must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" Jacks, 701 F.3d at 1230, quoting Watson, 551 U.S. at 152 (emphasis in original); accord Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812 (3d Cir. 2016); Ruppel, 701 F.3d at 1181. The Supreme Court held in Watson that a private party may not remove under § 1442(a)(1) simply because "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." Watson, 551 U.S. at 145. By contrast, the Court explained, "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks [for example] by providing the Government with a product that it used to help conduct a war." Id. at 153-54. The statutory language -- a private person "acting under" a federal officer

or agency -- describes a relationship that "typically involves 'subjection, guidance, or control.'" Id. at 151, quoting Webster's New International Dictionary 2765 (2d ed. 1953).

We must apply the Court's guidance in Watson to 3M's relationship with the military regarding its sale of commercial earplugs to private parties such as Graves. In discussing the federal contractor defense element, the district court found:

> In developing the instructions for the commercially available earplugs, 3M sought input from the US army audiologist who had been working on the military product. The audiologist agreed that the instructions "looked good," and asked whether 3M intended to abandon differential sizing. 3M, realizing it had forgotten something useful, incorporated the feedback into the instructions in the final product.
>
> However, 3M has not demonstrated that the government had any control over the instructions or warnings. 3M has not shown that they were obligated to seek government review, or that governmental approval of the commercial product's warning was necessary or required. Instead, in the Court's view, it appears that 3M voluntarily approached Ohlin for his advice, and that he gave advice 3M found useful. . . . [T]he Court would be hard-pressed to find that 3M could reasonably say 'the government made me do it' as to the instructions on the commercially available earplugs. Graves, 447 F. Supp. 3d at 914-15.

We agree with this analysis and therefore conclude that 3M failed to establish it was "acting under" an officer or agency of the United States in developing and disseminating warnings and instructions for its commercial CAEv2 earplugs. The voluntary request for military review and input regarding proposed commercial instructions does not demonstrate that 3M was carrying out or assisting in the *government's* duties. Government advice and assistance, like the regulatory rules and requirements at issue in Watson, do not establish the "acting under" relationship that § 1442(a)(1) requires. Accordingly, we affirm the grant of the motions to remand to

state court the claims of plaintiffs who acquired CAEv2 earplugs in the commercial marketplace, which we understand includes Graves, all the Hall plaintiffs, and some of the Copeland plaintiffs. For these plaintiffs, we do not affirm the district court's resolution of the federal contractor defense issue. 3M may of course assert that defense to the merits of plaintiffs' claims in state court.

An uncertain number of the plaintiffs in the Copeland cases worked for defense contractors and received CAEv2 earplugs from the military. 3M presented undisputed evidence that the military required its purchases of CAEv2 earplugs to be sent without instructions/warnings, and that the military developed its own instructions issued on wallet cards to service members. This is sufficient evidence to satisfy the "acting under" and "causal connection" elements of removal under § 1442(a)(1). Accordingly, for these plaintiffs, we must review whether the district court erred in ruling that 3M failed to present a "colorable" federal defense.

B. The Colorable Federal Defense Element. Congress enacted the original federal officer removal statute following the War of 1812 and a series of similar statutes thereafter until revising the statute in the 1948 codification. See Watson, 551 U.S. at 147-49. In sustaining these statutes over the years, the Supreme Court "ha[s] not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense." Mesa v. California, 489 U.S. 121, 129 (1989). The Court explained that this requirement has important constitutional roots:

> Section 1442(a), in our view, is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant. Section 1442(a), therefore, cannot independently support Art. III 'arising under' jurisdiction. Rather, it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes. Id. at 136.

"For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001); see Jacks, 701 F.3d at 1235. This principle is grounded in an historical premise underlying the federal officer removal statute:

> One of the primary purposes of the removal statute -- as its history clearly demonstrates -- was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. . . . In fact, one of the most important reasons for removal is to have the validity of the defense . . . tried in a federal court. The officer need not win his case before he can have it removed.

Willingham, 395 U.S. at 407. This principle applies equally when a private party seeks federal officer removal based on a government contractor defense under federal common law. See Bennett v. MIS Corp., 607 F.3d 1076, 1088-91 (6th Cir. 2010).

In its petition for federal officer removal and in opposing plaintiffs' motions to remand, 3M argued it has four colorable federal defenses against one or more of the Copeland military contractor plaintiffs -- the "government contractor defense" applied in Boyle; the "combatant activities" defense; and the arguments that some claims implicate federal enclave or federal admiralty jurisdiction. We determine that 3M has raised a colorable government contractor defense to the claims of plaintiffs who purchased CAEv2 earplugs through the military. As that determination establishes federal question jurisdiction over these cases, we need not consider whether the other asserted defenses are "colorable" at this stage of the proceedings. 3M may of course litigate the merits of these assertions as the cases proceed in federal court.

In Boyle, a diversity case, the Supreme Court addressed the question "when a contractor providing military equipment to the Federal Government can be held liable

-9-

under state tort law for injury caused by a design defect." 487 U.S. at 502. Plaintiffs sued the manufacturer of a military helicopter for defective design because the helicopter's escape hatch opened outward, rather than inward, causing the pilot to drown when water pressure kept his submerged hatch from opening. Id. at 503. The Court concluded that

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated -- i.e., they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

Id. at 512. Although Boyle was a design-defect case, our sister circuits have applied it to failure-to-warn claims, such as those asserted by the Copeland plaintiffs in these cases. In doing so, they have applied the Boyle elements, slightly modified to reflect the failure-to-warn context, requiring the defendant asserting the federal contractor defense to show (1) the federal government, exercising its discretion, approved specifications for the product in question, including certain warnings; (2) the contractor provided the approved warnings required by the government; and (3) the contractor warned the government about any hazards known to it but not to the government. See Papp, 842 F.3d at 814; Leite v. Crane Co., 749 F.3d 1117, 1123 (9th Cir.), cert. denied, 574 U.S. 934 (2014); Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); Tate v. Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995). Like the district court, we conclude

this is a "logical expansion" of <u>Boyle</u> and therefore "the federal contractor defense applies to failure-to-warn claims." <u>Graves</u>, 447 F. Supp. 3d at 914 n.3.

We reject 3M's contention that it presented a colorable government contractor defense in these failure-to-warn cases with evidence showing the government was involved in and controlled the *design* of the CAEv2 earplugs. "Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings, if any, that should accompany the product." <u>Tate</u>, 55 F.3d at 1156. To remove a failure-to-warn claim under § 1442(a)(1), 3M must make a colorable showing that "the Government dictated or otherwise controlled the nature and the content of the product warnings." <u>Cuomo v. Crane Co.</u>, 771 F.3d 113, 117 (2d Cir. 2014) (cleaned up).

We nonetheless conclude that 3M made the requisite showing of a colorable federal contractor defense in the military contractor cases. 3M provided evidence that: the government required 3M to package CAEv2 earplugs provided to the military in bulk, without instructions; 3M complied; 3M warned the government that folding back the flanges of the outward end of the earplugs would ensure a proper fit; and the military developed and produced its own instructions that it provided military users on a wallet card. "[W]here the government goes beyond approval and actually determines for itself the warnings to be provided," the contractor has established the government control and exercise of discretion the government contractor defense is intended to protect. <u>Tate</u>, 55 F.3d at 1157.

Applying <u>Boyle</u>, the district court nonetheless ruled that 3M had not shown a colorable federal contractor defense. In <u>Boyle</u>, the Supreme Court explained:

> That the procurement of equipment by the United States is an area of uniquely federal interest does not, however, end the inquiry. That merely establishes a necessary, not a sufficient, condition for the displacement of state law. Displacement will occur only where, as we have variously

-11-

described, a "significant conflict" exists between an identifiable "federal policy or interest and the [operation] of state law," or the application of state law would "frustrate specific objectives" of federal legislation.

487 U.S. at 507 (footnote and citations omitted). Based on this principle, plaintiffs argued, and the district court agreed, "that 3M has failed to show . . . a conflict with state law and has thus failed to show it plausibly has a colorable claim under the federal contractor defense." Graves, 447 F. Supp. 3d at 916.

This reasoning fails to recognize the important difference between federal question jurisdiction and the preemption of state law. In Boyle, there was federal diversity jurisdiction. The Court did not need to consider, and did not address, when a colorable federal contractor defense is the basis for federal question jurisdiction. Rather, it decided the *merits* of whether the contractor defense in that case preempted state law. Thus, requiring a private contractor seeking federal officer removal to show a "colorable" claim of state law preemption violates the fundamental principle that "[t]he officer need not win his case before he can have it removed." Willingham, 395 U.S. at 407. When the removed cases are litigated on the merits *in federal court*, it may be that 3M will fail to prove its federal contractor defense, or there may be no conflict requiring preemption under Boyle because state law would recognize the defense in these circumstances. On the other hand, if federal law provides 3M a contractor defense that state tort law would reject, then the federal court will need to apply the preemption principles discussed in Boyle to determine whether the federal contractor defense (or any other defense asserted by 3M) defeats plaintiffs' claims. When federal duties and state tort law "give contrary messages as to the nature and content of required product warnings, they cause the sort of conflict Boyle found so detrimental to the federal interest in regulating the liabilities of military contractors." In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 629 (2d. Cir. 1990).

For these reasons, we conclude that 3M has a colorable federal contractor defense for claims made by Copeland plaintiffs who acquired CAEv2 earplugs through the military, and has satisfied the other elements required for § 1442(a)(1) removal as to these plaintiffs. The district court's remand orders are reversed as to this group, whose members will need to be determined on remand. We make no determination as to the merits of the federal contractor defense. See Jacks, 701 F.3d at 1235.

## III. Conclusion

We affirm the district court's orders remanding to state court the failure-to-warn claims of plaintiffs who acquired commercial CAEv2 earplugs. We reverse the remand orders for plaintiffs who acquired CAEv2 earplugs through the military and remand for further proceedings not inconsistent with this opinion.

_____