# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2441
_____

Derek Christopherson; Jennifer Christopherson

*Plaintiffs - Appellants*

v.

Robert Bushner; Connie Bushner; Federal Emergency Management Agency; Inez Pahlmann; Missouri Ozarks Realty, Inc.; John Doe; Stantec Consulting Services, Inc.; Atkins North America, Inc.; Dewberry Engineers, Inc.; Corelogic Flood Services, LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: February 17, 2022
Filed: May 2, 2022
_____

Before SMITH, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Plaintiffs Derek and Jennifer Christopherson bought a lot with a house, near the North Fork of the White River in Tecumseh, Missouri. They did not get flood insurance for the house. Within weeks, the region flooded, destroying the house. The Christophersons sued the property sellers, the Federal Emergency Management

Agency, and some private contractors that help FEMA assess flood risk. Those contractors moved to dismiss for failure to state a claim. The district court[1] granted the motion. Having jurisdiction under 28 U.S.C. § 1291, this Court affirms.

I.

In March 2017, Plaintiffs Derek and Jennifer Christopherson purchased a house and property in Tecumseh, Missouri, on the North Fork of the White River.

While purchasing the home, they reviewed the flood certificate from FEMA for the home, and hired Corelogic Flood Services, LLC to do further investigation. They allege that Corelogic provided information "indicat[ing] there had been no Letter of Map Amendment ('LOMA') or Letter of Map Change ('LOMC') for the Home and Property at any time" and these "were not, and had never been, located within a designated Special Flood Hazard Area" ("SFHA").

FEMA documents "available to" the Christophersons when they bought the home showed that the 100-year flood line was 581.4 feet and the home's foundation was "located at approximately 581.8 feet," thus inches outside the 100-year flood zone and the SFHA.[2]

Robert and Connie Jo Busher, who built the home in 2007 and sold it to the Christophersons, assured them it was "not in a FEMA flood zone, had never flooded, and w[as] not at risk for flooding."

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

[2]A 100-year flood is a flood with a 1 in 100 chance of being equaled or exceeded in any year. During such a flood, the flood *line* is the maximum elevation that water would reach, and the flood *zone* is everything that would be underwater at that point. The SFHA label designates this 100-year flood zone.

In April 2017, 40 days after the Christophersons moved in, a flood "destroyed the [h]ome and all the family's personal property."

Despite the previous information from Corelogic, FEMA in fact had issued a "Letter of Map Amendment Determination Document (Non-Removal)," dated March 11, 2010.  It listed the 100-year flood line as 615.4 feet, and designated the home as within flood-map zone "A" and the SFHA.  **Am. Compl.** ¶ 47, DCD 31; *see also* **3/11/20 LOMA**, DCD 26-4 ("[W]e have determined that the structure(s) . . . is/are located in the SFHA.").

An April 8, 2010, "Letter of Map Amendment Determination Document (Removal)" from FEMA removed that designation, lowering the 100-year flood line to 581.4 feet ("2010 Change").  This second LOMA placed the home in flood-map zone "X (unshaded)," and outside the SFHA.  **4/8/10 LOMA**, DCD 26-5 (stating the "structure(s) . . . is/are not located in the SFHA," so "the Federal mandatory flood insurance requirement does not apply").

Plaintiffs allege that either FEMA or the Strategic Alliance for Risk Reduction ("STARR")—an independent contractor with FEMA—made the 2010 Change to the 100-year flood-line estimate and SFHA designation.  They allege that STARR is a joint venture by Defendants Stantec Consulting Services, Inc., Dewberry Engineers, Inc., and Atkins North America, Inc., but do not name STARR itself as a defendant.

They further allege that FEMA or STARR revised the flood map assessment of the property in 2018 to place it back in the 100-year flood area and "backdated the modification to 2010 to make it appear" that the property "at no time" fell outside that area.  They allege this 2018 Change caused further harm by making it impossible to sell the property.

In 2019, the Christophersons sued the Bushners, FEMA, Stantec, Dewberry, Atkins, and the realtor and realty company for the Bushners for various state and federal torts.  They later amended the Complaint, including Count II, a claim against

"FEMA, STARR, John Doe" for "Fraudulent/Negligent Misrepresentation/Federal Tort Claims Act." **Am. Compl.** at 18, DCD 31.[3]

As relevant, Atkins and Stantec filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), extending the federal-contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), to argue that the state-law claim was preempted by the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-131 ("NFIA"). *See* Mot. Dismiss Br., DCD 54. Dewberry filed a separate 12(b)(6) motion, arguing it was not a proper defendant because it was not a member of STARR at the time of the alleged 2010 activity and, even if it were, the Christophersons did not identify any acts or omissions by it. The district court granted Stantec's and Atkin's motion, dismissed the claim against them and Dewberry based on preemption, and dismissed Dewberry's motion as moot.

The Christophersons appeal.

## II.

The Christophersons fail to state a claim because their Complaint does not contain sufficient factual matter to show they are entitled to relief from Atkins, Stantec, or Dewberry.

This Court reviews "de novo a grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." **Schulte v. Conopco, Inc.**, 997 F.3d 823, 825 (8th Cir. 2021) (quotations omitted). "[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" **Id.**, *quoting* **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009) ("*Iqbal*"). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Iqbal**, 556 U.S. at

---

[3]In this opinion, this Court refers to the Amended Complaint as "the Complaint."

678. "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quotations omitted).

This Court "accept[s] as true all factual allegations in the light most favorable to the nonmoving party." *Schulte*, 997 F.3d at 825 (quotations omitted). However, "naked assertions devoid of further factual enhancement," do not suffice, nor do "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up) (quotations omitted). "Rather, the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) ("*Propane Tank I*"), *quoting* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Christophersons seek relief against Atkins, Dewberry and Stantec under either the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, or the "common law for . . . fraudulent/negligent misrepresentations" "should the [FTCA] not apply to the STARR Defendants." The Christophersons effectively seek these three alternative forms of relief under one pleaded count. Each fails.

The Christophersons fail to state an FTCA claim against these Defendants because they do not allege STARR or any of these Defendants were employees of the federal government. *See* **28 U.S.C. §§ 1346(b)(1)**, **2679(b)(1)** (providing FTCA remedy for an injury caused by "the negligent or wrongful act or omission of any *employee of the Government*" (emphasis added)).

Meanwhile, for state-law claims, "this [C]ourt applies 'federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law.'" *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020), *quoting* *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013).

Under Missouri law, a plaintiff must prove five elements for negligent misrepresentation: (1) "the speaker supplied information in the course of [its] business"; (2) "the information was false" "because of the speaker's failure to exercise reasonable care"; (3) the speaker "intentionally provided" "the information . . . for the guidance of limited persons in a particular business transaction"; (4) "the hearer justifiably relied on the information"; and (5) "the hearer suffered a pecuniary loss" due to its "reliance on the information." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010). The Complaint fails on three of these elements, but failing even just one would be fatal. *See id.*

The Complaint has no allegations about the acts or omissions Atkins, Stantec or Dewberry committed individually. Instead, it alleges these Defendants acted as the collective, "STARR," and refers to their ostensible participation only by that name or by attributing an act to a single, anonymous "John Doe" who allegedly was "an agent of FEMA and/or STARR" and "represents the individual or individuals responsible for the 2010 Change." The Complaint does not state how Atkins, Stantec and Dewberry work within STARR or which entity was responsible for any acts through STARR, and, notably, does not name STARR as a defendant.

The Complaint offers only three statements detailing STARR. First:

> STARR advertises that its joint venture is "comprised of three proven leaders in DFIRM mapping, risk assessment, risk communication, and mitigation planning." Moreover, STARR advertises that its partners "work as one in a common vision and purpose to reduce the loss of life and property caused by floods. STARR is helping FEMA and its partners create a flood-savvy nation, one community at a time . . . . through leveraging ongoing partnerships and inspiring local action to mitigate flood risk."

Second: "the STARR Defendants acted in conjunction with FEMA agents, and as the general contractor for FEMA Region VII (including Missouri), in creating [flood] maps," including "Flood Insurance Rate Maps" ("FIRMs") and the

"Standard Flood Hazard Determination Form" ("SFHDF"), both of which FEMA "publishes." Third: "the STARR Defendants specifically provided hazard identification and mapping in connection with FEMA, and acted as general contractor for FEMA, as will be detailed herein."

These obtuse statements say nothing about STARR's or these Defendants' specific roles in assessing flood risks, let alone in assessing flood risk for the Christopherson's property. Worse, the Complaint does not elaborate how the Defendants "act[] in conjunction with FEMA . . . in creating [flood] maps." The Complaint never delivers its promised "detail[s] herein."

Even assuming that, for the purposes of Rule 8(a), attributing acts to STARR would suffice to state a claim against any one of that entity's constituent partners—the actual Defendants—based on these three anemic passages, the Complaint still fails because it contains at best naked assertions and conclusory statements about STARR's role here. It does not satisfy the first, third, or fourth elements of negligent misrepresentation.

On the first element of negligent misrepresentation: the Complaint does not allege STARR supplied the information "in the course of [its] business," **Renaissance Leasing**, 322 S.W.3d at 134. Indeed, it never states what particular business STARR was conducting when any information was supplied, let alone how the information was supplied "in the course of" that business. Nor does the Complaint identify, in any detail, what information STARR allegedly provided. Instead, the Complaint provides only repeated, naked assertions that "FEMA and/or STARR" made the 2010 and 2018 Changes.

"Plaintiffs need not provide *specific facts* in support of their allegations," but they must provide "sufficient factual information . . . to raise a right to relief above a speculative level." **Propane Tank I**, 860 F.3d at 1070 (quotations omitted). For example, "list[ing] relevant individuals, acts, and conversations" may provide sufficient "'factual content' to support 'the reasonable inference that the defendant

is liable for the misconduct alleged,'" but mere "'naked assertion[s] devoid of further factual enhancement'" do not. *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see id.* (contrasting conclusory general statements—which formed only naked assertions—with allegations of particular communications and assurances defendants made to one another in a price-fixing scheme—which stated a claim); *see also **In re Pre-Filled Propane Tank Antitrust Litig.***, 893 F.3d 1047, 1057 (8th Cir. 2018) (affirming Rule 12(c) dismissal where plaintiffs failed to "list relevant individuals, acts, and conversations" to provide adequate "factual content"). Here, the Christophersons identify no particular acts by STARR, in the course of its business as a FEMA contractor, that support a reasonable inference that STARR "is liable for the misconduct alleged." *See **Propane Tank I***, 860 F.3d at 1070; *see also **Iqbal***, 556 U.S. at 683 (finding plaintiff failed to "nudge his claim . . . across the line from conceivable to plausible" where defendants could "not be held liable unless they themselves acted" with discriminatory intent—regardless of their subordinates' actions—but plaintiff's "only factual allegation" did not plausibly suggest this (quotations omitted)). Without further factual enhancement, the Christophersons' naked assertions do not suffice. *See **Propane Tank I***, 860 F.3d at 1070.

On the third element: the Complaint does not adequately allege STARR "intentionally provided" "the information . . . for the guidance of limited persons in a business transaction," ***Renaissance Leasing***, 322 S.W.3d at 134. The Complaint contains only repeated, conclusory statements that STARR was involved in the 2010 Change. *See ***Am. Compl.*** ¶ 49 ("The 2010 Change was based on a LOMC/LOMA by FEMA and/or STARR."). It does not provide any further detail about STARR's awareness of, let alone participation in, the 2010 LOMAs. Those documents themselves are on FEMA letterhead, tell recipients to contact the "FEMA Map Assistance Center" for additional information, and are signed by FEMA's "Acting Chief" of the "Engineering Management Branch" "Mitigation Directorate." Indeed, the Complaint frames FEMA—not STARR—as the decisionmaker. *See* **Am. Compl.** ¶ 93 ("At all pertinent times mentioned herein, FEMA was responsible for creating, maintaining, promulgating, and distributing its flood maps, including the SFHDF and FIRM, and ensuring the data therein was accurate for the public.").

To be sure, a defendant may be liable where it knew of an upcoming transaction between a third-party seller and buyer, and knew the buyer "w[as] relying on [its] representations." *Renaissance Leasing*, 322 S.W.3d at 135. But the Christophersons do not allege this. Instead, they provide only "naked assertions" and threadbare recitals of elements supported by "conclusory statements." *Iqbal*, 556 U.S. at 678; *see* **Am. Compl.** ¶ 55 (alleging, without elaboration, that "[t]he 2010 change was intentionally . . . made by FEMA and/or STARR . . . to deceive future purchasers"—despite the fact that purchase did not occur until 2017); *see also* *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1069 (8th Cir. 2021) (finding complaint failed to state claim for intentional infliction of emotional distress where "allegations of expletive laced language and threats of physical violence" were "too general to warrant anything more than speculation that [defendant's] conduct" met state-law outrageousness requirement for the claim (quotations omitted)).

On the fourth element: the Christophersons' own allegations preclude the necessary inference that they "justifiably relied on the information" provided by STARR. *See* *Renaissance Leasing*, 322 S.W.3d at 134. The Christophersons allege that they reviewed the "FEMA flood certificate, FIRMs, [and] SFHDF"—all documents published by FEMA. They further allege that they "relied on the official 'Flood Certificate' from Corelogic, which . . . specifically indicated there had been no [LOMA] or [LOMC] at any time," and that they "precisely verified the Home" "had never received any changes" to its flood-risk "expectancy by way of any LOMA/LOMC."

With these allegations, the Christophersons aver that: (1) the documents they reviewed came either from FEMA or Corelogic, not STARR, and (2) they had no knowledge of the 2010 Change at the time of the purchase. Their only justifiable reliance must be premised on documents from FEMA or Corelogic. However, once again, they provide no factual details about STARR's role in helping produce these documents. Vague, naked assertions and conclusory statements about STARR's involvement do not suffice. *See* *Iqbal*, 556 U.S. at 678. Moreover, even if STARR played a role in the 2010 Change, the Christophersons do not allege they relied on

the LOMAs, which form that change, because they explicitly state Corelogic found no LOMAs at the time of the purchase. Thus, the Complaint fails to state this element as well.

The Complaint fails to state a claim for negligent misrepresentation against Atkins, Dewberry, and Stantec because the Christophersons provide "only naked assertions devoid of further factual enhancement" for three elements. *See Iqbal*, 556 U.S. at 678. At base, negligent misrepresentation focuses on misdeeds by "the speaker" of the information, but the Christophersons do not plausibly allege that STARR spoke any of the allegedly tortious information. *See Renaissance Leasing*, 322 S.W.3d at 134 (framing elements in terms of "the speaker" and "the hearer"). Insofar as Count II is for negligent misrepresentation against these three Defendants, the Complaint fails "to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678.

The Complaint similarly fails to state a claim for fraudulent misrepresentation against these Defendants because it does not plead with particularity which defendant made what representation to the Christophersons, let alone the nature of any Defendant's participation in a specific misrepresentation. *See* **Fed. R. Civ. P. 9(b)** (requiring a plaintiff "state with particularity the circumstances constituting fraud" when "alleging fraud"); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (requiring under Rule 9(b) that "[w]here multiple defendants are asked to respond to allegations of fraud," the complaint "inform each defendant of the nature of his alleged participation in the fraud"—that is, "specify the time, place, and content of" each defendant's false representations, "including when the acts occurred, [and] who engaged in them" (quotations omitted)); *see also* **Renaissance Leasing**, 322 S.W.3d at 131-32 (listing elements of fraudulent misrepresentation, including a false representation, and "the speaker's knowledge of [that representation's] falsity or ignorance of its truth").

Lumping Atkins, Dewberry, and Stantec together under the opaque header of "STARR" flouts Federal Rule of Civil Procedure 9(b). *See* **Streambend Props.**, 781

-10-

F.3d at 1013 (holding complaint failed to state a fraud claim where it alleged multiple defendants "took action directly or indirectly" through other entities because "[c]asting such a broad net in pleading a claim grounded in fraud does not satisfy Rule 9(b)" (quotations omitted)).

Finally, insofar as the Christopherson seek to recover for the alleged 2018 backdating of flood-map corrections that placed the property back in the 100-year flood zone, they also fail to state a claim for this act. The FTCA does not apply because they do not allege these Defendants were employees of the federal government. Neither negligent nor fraudulent misrepresentation apply because they allege the 2018 change was a *correct* revision that now accurately reflects the flood risk to their land—and do not allege they somehow relied on this 2018 change. Thus, the Complaint fails to state any claim against Atkins, Dewberry, or Stantec.

Because the Complaint fails on its face, this Court need not conduct the involved, multistep process of assessing whether *Boyle*'s federal contractor defense extends to FEMA flood mapping. *See, e.g.*, **In re KBR, Inc., Burn Pit Litig.**, 744 F.3d 326, 347 (4th Cir. 2014) (explaining *Boyle*'s "three-step process to determine whether federal law preempt[s] state law"); ***id.*** at 346-51 (applying process to create test for FTCA combatant-activities-contractor defense); **Saleh v. Titan Corp.**, 580 F.3d 1, 6-9 (D.C. Cir. 2009) (conducting similar analysis and crafting preemption test for military-prison contractors); **Badilla v. Midwest Air Traffic Control Serv., Inc.**, 8 F.4th 105, 127-29 (2d Cir. 2021) (applying "*Boyle*'s useful analytic process for determining whether federal law preempts state-law claims against government contractors" to air-traffic-control contractor (quotations omitted)).

Even if the defense applied, however, it would not be dispositive on the limited record presented because it requires: a federal entity, acting with discretion, delegate a specific act to the contractor; the contractor undertake that specific act as instructed by the entity; and the contractor warn of any risks associated with the act and known to it but not the entity. *See, e.g., **Boyle***, 487 U.S. at 512 ("Liability for design defects in military equipment cannot be imposed, pursuant to state law, when

-11-

(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."); ***Graves v. 3M Co.***, 17 F.4th 764, 772 (8th Cir. 2021) (requiring similar three elements for failure-to-warn federal contractor defense).

This fact-intensive inquiry often requires evidence well beyond the pleadings and documents integral to them. *See **Graves***, 17 F.4th at 772 (reviewing evidence presented); *see also **Boyle***, 487 U.S. at 513 (stating, that where Boyle already went to trial, "[i]f the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated defense," then judgment could be entered immediately for the contractor). *Compare **In re KBR***, 744 F.3d at 351 (reversing district court where it "erred in resolving [federal contractor defense] issue before discovery took place"), *with **Columbia Venture, LLC v. Dewberry & Davis, LLC***, 604 F.3d 824, 831-32 (4th Cir. 2010) (concluding—at pleading stage—that NFIA preempted suit against flood-mapping contractor with a lone citation to *Boyle*, but not discussing *Boyle*'s analytical process, three-element test, or emphasis on evidentiary showing).

\* \* \* \* \* \* \*

Because the Complaint fails to state a claim against Atkins, Stantec, or Dewberry, the judgment is affirmed.

_____